UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| SCOTT MAY, as Personal Representative for THE ESTATE OF HUGH H. MAY; and JOHN D. BATCHELOR, individually and on behalf of all others similarly situated,<br>   Plaintiffs,<br><br>vs.<br><br>PUTNAM COUNTY SHERIFF MARK FRISBIE, individually and in his official capacity, SGT. DEBRA ROBINSON, individually, UNNAMED PUTNAM COUNTY JAILERS, individually,<br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 2:07-cv-286-LJM-WGH |

## ORDER

This matter comes before the Court on Defendants', Putnam County Sheriff Mark Frisbie ("Frisbie"), individually and in his official capacity, Sgt. Debra Robinson ("Sgt. Robinson"), individually, Unnamed Putnam County Jailers, individually (all defendants collectively, "Defendants"), Motion for Summary Judgment; and plaintiffs', Scott May ("Scott May") as Personal Representative for the Estate of Hugh H. May ("May") and John D. Batchelor ("Batchelor"), individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), Motion to Certify Class and Motion to Approve Form of Proposed Notice of Class Action. Plaintiffs' Class Action Complaint ("Complaint") asserts claims pursuant to 42 U.S.C. §§ 1983 and 1985 that relate to Defendants' alleged strip search policy. The Court has considered the parties' arguments and, for the following reasons,

**DENIES** Plaintiffs' Motion to Certify Class and Motion to Approve Form of Proposed Notice of Class Action; and **GRANTS** Defendants' Motion for Summary Judgment.[1]

## I. BACKGROUND

On the night of November 11, 2006, May was taken to the Putnam County Jail for booking on charges of, among other things, operating a motor vehicle while intoxicated. Pls.' Ex. 1, Dkt. No. 55(1). Certain jail personnel performed a strip search on May during his intake process. Specifically, the jail personnel required May to strip naked while he changed into a jail issued uniform.

Likewise, on June 8, 2007, Batchelor taken to the Putnam County Jail for booking on charges of, among other things, public intoxication and operating a motor vehicle while intoxicated. Dkt. No. 57(6), at 19-22. Jail personnel also performed a similar strip search on Batchelor. *Id.* at 7-10.

Both May's Estate (the "Estate") and Batchelor and assert that May and Batchelor were stripped searched pursuant to an unconstitutional strip search policy. At issue in Defendants' Motion for Summary Judgment is May's individual claims against Defendants as they are asserted by the Estate. In addition, both the Estate and Batchelor seek class certification pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"), of a proposed class of individuals who were subjected to the same strip search policies at the Putnam County

---

[1] As an initial matter, May's Estate conceded his § 1985 claim in Plaintiffs' Response Brief. Therefore, Defendants' Motion for Summary Judgment on that claim is **GRANTED**.

Jail. The Putnam County Sheriff's Department's ("PCSD") Jail Operations Manual ("Manual") provides:

    A.  Search Procedures - General

*   *   *

2.    The jail staff will search all incoming inmates. Searches of incoming inmates will include pat down searches in the case of misdemeanor charges and strip searches in the case of felony or drug related charges/history. Not all inmates admitted shall be Strip-searched. Strip searches must be based on a reasonable suspicion that the inmate possesses or may possess weapons, drugs, or contraband (See Strip Search Form).

*   *   *

6.    Jail Deputies shall review the Strip Search Form before any strip search is authorized and complete said form after.

    VIII.  Strip Search

A strip search requires reasonable suspicion that the inmate/arrested may possess weapons, drugs, or contraband. During a strip search the subject shall remove all clothing and submit to a visual inspection of the body, including the outer portions of all orifices and cavities. Given the primary issues involved in this type of search and the inmate's increased sensitivity to these more personal types of body searches, staff must perform this function with the utmost professionalism. Except during an emergency situation as declared by the Jail Commander or designee, a strip search must afford the inmate reasonable privacy and shall be conducted by staff of the same gender. Categories of inmates subjected to strip searches to ensure adequate security are:

*   *   *

I.    Arriving inmates charged with a felony, excluding driving offenses.

*   *   *

The general guidelines for conducting a strip search are:

A.    Inform the inmate that he or she is to be searched;

3

B. Instruct the inmate to remove all clothing, including hat, scarf, headband, false teeth, and wig;

C. Conduct a thorough search of the clothing, including shoes, for contraband;

D. Examine all bandages and casts, using a hand-held metal detector, if available;

E. Instruct the inmate, once unclothed, to face the officer and spread arms and legs for visual search.

F. Have the inmate run his or her hands through hair vigorously to dislodge anything hidden in the hair or scalp or the staff member may do this using disposable plastic gloves, if necessary (Braids, ponytails, buns or other hair styles that could be used to hide an object shall be undone to ensure a thorough search.);

G. Have the inmate open his or her mouth and remove dentures or bridgework, using a flashlight to inspect the inside of the mouth and under the tongue;

H. Check the inmate's nose and ears, again using a flashlight, if necessary;

I. Have male inmate raise the scrotal sac and peel back the foreskin, if present;

J. Have female inmates lift breasts to ensure nothing is hidden underneath and spread the vaginal opening to inspect for any protruding objects or other signs of contraband;

K. Have the inmate bend over and spread the buttocks for a visual inspection of the anal area for any protruding objects or other signs of contraband;

L. Have inmates spread all fingers and display both open hands at the same time, turning them over for inspection of top and bottom; and,

M. Have the inmate raise each foot and wiggle the toes, turning the foot up for an inspection of the bottom.

After the above inspections have been carried out and the inmate's clothing has been thoroughly searched, the inmate shall be instructed to dress.

Pls.' Ex. 3, Dkt. No. 55(3).

Throughout their briefs, Plaintiffs cite to Sgt. Robinson's December 29, 2006, deposition (the "2006 Deposition"), taken as a part May's related criminal case. On November 11, 2006, the day May was arrested and brought to the Putnam County Jail, Sgt. Robinson worked as a sergeant in the Putnam County Jail. In the 2006 Deposition, Sgt. Robinson testified about PCSD's strip search policies and procedures. First, she described the searches performed on any person brought in to the Putnam County Jail. She testified that jail personnel perform an initial pat down search of the detainees to make sure the detainees do not have knives, guns, or "anything that can cause harm to jail officers or themselves." Dkt. No. 55(2). In additional, the jail personnel perform another search when the detainees are changed out into their jail uniform "to determine if there are any other hidden areas that may have contraband such as drugs." *Id.* She described this search as follows:

> That is a visual search. If we have suspicion that they have drugs on them, then a strip search is conducted, which is an entirely totally different thing. If we do not suspect drugs or any contraband such as that, then the inmate is just asked to undress totally. We check their ears, their mouth, and at that time then they start putting their uniform on.

*Id.* When asked if the detainees are "completely naked at that point," Sgt. Robinson responded, "Yes, sir." *Id.* She then testified that this type of search was performed on anyone brought into the jail, regardless of whether that person is charged with a felony or misdemeanor. *Id.*

Defendants deposed Sgt. Robinson in the current case. In that deposition (the "2008 Deposition"), she essentially recanted all of her testimony from the 2006 Deposition. In addition, Defendants have moved the Court to strike the portions of the 2006 Deposition

upon which Plaintiffs relied on their briefs. The Court considers the parties' arguments related to the 2006 Deposition below.

Ultimately, Plaintiffs contend that, notwithstanding the language in the Manual that requires a finding of "reasonable suspicion," the jail personnel regularly strip searched a detainee without a reasonable suspicion that the detainee possessed weapons, drugs, or contraband as a matter of course during intake. In addition, Plaintiffs contend that Defendants performed a more intrusive strip search without reasonable suspicion on all detainees charged with a felony. Plaintiffs assert that, in either case, Defendants actions were unconstitutional.

Plaintiffs seek class certification for the following two classes:

1. Pretrial detainees who were subjected to a visual strip search upon intake into the Putnam County Jail during the period of time from October 17, 2005, to the present and for which records indicate were strip searched solely because they were arrested and despite no specific articulable individualized reasonable suspicion that they were secreting weapons or contraband.

2. All pretrial detainees who were subjected to a more invasive strip search (including search of genitalia, the anus, and/or breasts) upon intake into the Putnam County Jail during the period of time from October 17, 2005, to the present and for which records indicate were strip searched solely because they were arrested and despite no specific articulable individualized reasonable suspicion that they were secreting weapons or contraband.

The Court adds additional facts as needed below.

## II. STANDARDS

### A. SUMMARY JUDGMENT

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990). Motions for summary judgment are governed by Federal Rule of Civil Procedure 56 (c) ("Rule 56(c)"), which provides in relevant part:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which she relies. *See*

*Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). When the moving party has met the standard of Rule 56, summary judgment is mandatory. *See Celotex*, 477 U.S. at 322-23; *Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). "If the nonmoving party fails to establish the existence of an element essential to [her] case, one on which [she] would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

### B. CLASS CERTIFICATION

Certification of a class is governed by Rule 23. The propriety of class certification does not depend on the outcome of the suit or on whether a party will prevail on the merits but whether the requirements of Rule 23 are met. *See Eisen v. Carlisle*, 417 U.S. 156, 177-78 (1974); *Chavez v. Ill. State Police*, 251 F.3d 612, 620 (7th Cir. 2001). To show that

class certification is justified in this case, Plaintiffs must first satisfy the four requirements of Rule 23(a).  *See Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000); *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 475 (7th Cir. 1997).  The prerequisites in Rule 23(a) are:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).

Once the Court determines that the Plaintiffs have satisfied these prerequisites, then the Court must determine whether they meet one or more of the requirements of Rule 23(b).  *See Williams*, 204 F.3d at 760; *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).  Plaintiffs seek certification pursuant to Rule 23(b)(2) and (3). Under Rule 23(b)(2), Plaintiff must demonstrate that Defendants, "ha[ve] acted or refused to act on grounds generally applicable to the class" so that final injunctive or declaratory relief will be appropriate for the class as a whole. *See* FED. R. CIV. P. 23(b)(2). Under Rule 23(b)(3), the Court must "find[] that the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3).

## III. DISCUSSION

### A. THE 2006 DEPOSITION

The Defendants quote the following passage from "Federal Rule of Evidence 32(a)" in support of their argument that the Court should strike the 2006 Deposition from the record:

> any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying may be used against any party who was present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof . . . .

Defs.' Cert. Br. at 9. Defendants clearly meant to cite Federal Rule of Civil Procedure 32(a) ("Rule 32(a)"), but even then the language quoted above does not appear in Rule 32(a). Rule 32(a)(1) provides:

> At a hearing or trial, all or part of a deposition may be used against a party on these conditions:
>
> (A) the party was present or represented at the taking of the deposition or had reasonable notice of it;
>
> (B) it is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; and
>
> (C) the use is allowed under Rule 32(a)(2) through (8).

FED. R. CIV. P. 32(a). Rule 32(a)(2) states: "***Impeachment and Other Uses.***  Any party may use a deposition to contradict or impeach the testimony given by the deponent as a witness, or for any other purpose allowed by the Federal Rules of Evidence. FED. R. CIV. P. 32(a) (emphasis in original). In addition, Rule 32(a)(8) states:

> ***Deposition Taken in an Earlier Action.***  A deposition lawfully taken and, if required, filed in any federal- or state-court action may be used in a later

> action involving the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action. A deposition previously taken may also be used as allowed by the Federal Rules of Evidence.

*Id.* (emphasis in original).

Here, Defendants assert that the 2006 Deposition should be stricken because the PCSD was not present or represented at the 2006 Deposition, and that it did not have notice of the deposition. However, the PCSD cannot deny that Sgt. Robinson was Sergeant in charge at PCSD at the time of May's detainment. She was deposed as a part of May's criminal case. It is a safe assumption, when subpoenaed to testify at that deposition, that Sgt. Robinson would be asked about what occurred during May's intake. At the very least, PCSD should have known that May's defense counsel would have questioned Sgt. Robinson about the intake procedure and the fact that jail personnel strip searched May. Accordingly, the Court concludes that PCSD had notice of the 2006 deposition under Rule 32(a)(1). Therefore, Defendants' Motion to Strike is **DENIED**.

### B. § 1983 CLAIM

Defendants seek summary judgment on May's § 1983 claim. Defendants argue that, among other things, May's § 1983 claim fails as a matter of law because it did not survive May's death. Indiana law applies to the question of whether or not May's § 1983 claim survives his death. *See* 42 U.S.C. § 1988; *Robertson v. Wegmann*, 436 U.S. 584, 588-89 (1978); *Hutchinson on Behalf of Baker v. Spink*, 126 F.3d 895, 898 (7th Cir. 1997).

Indiana's survivor statute, Indiana. Code § 34-9-3-1, provides:

> (a) If an individual who is entitled or liable in a cause of action dies, the cause of action survives and may be brought by or against the representative of the deceased party except actions for:
>     (1) libel;
>     (2) slander;
>     (3) malicious prosecution;
>     (4) false imprisonment;
>     (5) invasion of privacy; and
>     (6) personal injuries to the deceased party;
> which survive only to the extent provided in this chapter.

The Estate cites *Blake v. Katter*, 693 F.2d 677 (7th Cir. 1982), which holds that civil rights claims such as the present one do not qualify as "personal injuries" within the meaning of the survival statute. Pls.' Br. at 15. However, the Seventh Circuit later held that the Supreme Court decision in *Wilson v. Garcia*, 471 U.S. 261 (1985), overruled *Blake*. *See Campbell v. Chappelow*, 95 F.3d 576, 580 (7th Cir. 1996). Further, to the extent the Estate argues that *Wilson* is limited to statutes-of-limitations and not abatement statutes, the Seventh Circuit, citing *Wilson*, has expressly held that "in order to determine whether a § 1983 claim survives, [a court] must look to the state law governing whether a personal injury claim survives." *Bennett v. Tucker*, 827 F.2d 63, 68 (7th Cir. 1987). The Court concludes that *Blake* is no longer good law and that the Estate's reliance on *Blake* is misplaced.

Applying Indiana Code § 34-9-3-1(a)(5) to the instant facts, the Court concludes that May's § 1983 claim qualifies as a claim for "invasion of privacy" under Ind. Code § 34-9-3-1(a)(5). First, the Court notes that the Estate does not assert that May suffered any physical injury resulting from any unlawful touching. In addition, the alleged constitutional violation did not cause May's death. Therefore, the case law cited by the Estate, which held that where a plaintiff's death is caused by the constitutional violation the claim did not

12

abate upon death for deterrence purposes, does not apply to the present case. Here, the Estate's claim is predicated on Defendants' alleged unreasonable and intrusive search. The Court concludes that the state law tort claim most analogous to a Fourth Amendment claim of unreasonable search would be the state law claim for invasion of privacy. *See Ind. Nat'l Bank v. Chapman*, 482 N.E.2d 474, 478-79 (Ind. Ct. App. 1985) (applying Fourth Amendment analysis in invasion of privacy claim involving search). As a result, May's claim does not survive his death. Defendants' Motion for Summary Judgment is **GRANTED**.

### C.  CLASS CERTIFICATION

As an initial matter, the Court notes that, because the Estate no longer has a valid claim to pursue on May's behalf, it cannot act as class representative in a Rule 23 class action. FED. R. CIV. P. 23(a)(3)-(4). Therefore, Batchelor stands as the lone potential class representative. The Court addresses Rule 23's requirements below.

#### 1.  Rule 23(a)

As to numerosity, Batchelor contends that the potential class of plaintiffs could number in excess of 794 individuals. Batchelor derived this number from a search of the Putnam County Courts Criminal docket through a program called "Doxpop," which according to Batchelor shows approximately how many detainees were booked into the Putnam County Jail between October 17, 2005, to the present. Defendants claim this number is too speculative. However, if Batchelor's allegations are true, that is if Putnam

13

County Jail personnel strip search detainees pursuant to a generally applicable policy, Batchelor's numbers are not too speculative. The Court can reasonably assume that more than a few dozen people were arrested in Putnam County since October 17, 2005. See *Bledsoe v. Combs*, No. NA 99-153-C H/G, 2000 WL 681094, at *1 (S.D. Ind. Mar. 14, 2000).

With respect to commonality, the Court concludes that Batchelor has satisfied Rule 23(a)(2). Here, there are certainly common question of law or fact concerning the policies and general practices related to strip-searches of pretrial detainees at the Putnam County Jail. *See, e.g.*, *Id.* Although Defendants may argue that they had a reasonable suspicion to support their search of each individual class member, Batchelor has asserted that jail personnel searched all detainees during intake procedures without the requisite reasonable suspicion. Accordingly, Batchelor has satisfied Rule 23(a)(2).

In addition to commonality, Batchelor's claim must be typical of the class. FED. R. CIV. P. 32(a)(3). From the designated evidence submitted to the Court, it appears that Batchelor was not submitted to the more intrusive strip search referenced in the second subclass, wherein the detainee is required to manipulate his or her body parts, including the genitals. As a result, Batchelor's claim is not typical of that subclass. The mere fact that Batchelor was charged with a felony, without an allegation that he was subjected to the more intrusive strip search, is insufficient to satisfy Rule 23(a)(3).

Nevertheless, the Court concludes that Batchelor's claim is typical of the first subclass. Defendants argument that the jail personnel had reasonable suspicion based upon Batchelor's behavior, arrest record, and the fact he was charged with a felony, is unavailing. As Batchelor points out, the Defendants have not produced any paperwork

related to his strip search during intake at the Putnam County Jail. The Operations Manual instructs the Jail Personnel to utilize the strip search form, yet none of that paperwork was completed during Batchelor's arrest and intake strip search. Therefore, at this point in the litigation, the Court concludes Batchelor's claim is typical.

Finally, Rule 23(a)(4) requires that Batchelor will adequately represent the class. FED. R. CIV. P. 23(a)(4). This inquiry relates not only to Batchelor's representation, but also to the counsel Batchelor has chosen to represent the class. *See Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890, 896 (1981). Defendants do not dispute that Batchelor's counsel is able to adequately represent that class. Although the Court has a duty to independently inquire into the adequacy of counsel to represent the class, the Court concludes, based upon the parties' representations, Batchelor's counsel satisfies Rule 23(a)(4). Defendants again assert that Batchelor will not adequately represent the class because his individual claim fails because the jail personnel's strip search was supported by reasonable suspicion. However, as discussed above, this argument is not persuasive at this stage in the litigation. Likewise, Defendants' argument about standing is also unpersuasive for the same reasons.

In conclusion, Batchelor has satisfied Rule 23(a).

### 2. Rule 23(b)

Next, Batchelor must demonstrate that the proposed class meets the criteria of at least one of the subparagraphs under Rule 23(b). Batchelor relies on both Rule 23(b)(2) and (3). Batchelor asserts that his allegations, if true, demonstrate that Defendants have acted "on grounds generally applicable to the class." As a result, he argues that final

injunctive relief would be appropriate for the class as a whole. Likewise, he argues that questions of law or fact common to the class members predominate and that a class action provides the superior method for a fair and efficient adjudication of the controversy. Defendants argue, among other things, that a class would be unmanageable because the Court would need to consider the specific facts of each arrestee to determine whether the person qualifies as a member of the class and, if liability is found, to decide on individual damages.

In *Bledsoe*, Judge Hamilton considered a motion for class certification in a case strikingly similar to the case at hand. 2000 WL 681094, at *1-3. There, the plaintiffs alleged that the Washington County Sheriff had a standard policy of strip-searching all persons detained in the jail where there was not reasonable suspicion for believing the detainee had concealed controlled substances, weapons, or other contraband. *Id.* at *2.

In denying the motion, Judge Hamilton stated, "[t]he decisive factor . . . is the difficulty likely to be encountered in managing a class action . . . [that] stems from the nature of plaintiffs' claims." *Id.* at *3. Citing both Supreme Court and Seventh Circuit case law, Judge Hamilton noted that "the claims of any individual arrestee subjected to a strip search must be evaluated by looking at the individual circumstances of the arrestee and the search." *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 558-60 (1979); *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1272-73 (7th Cir. 1983)). Likewise, "any consideration of damages would be individualized." *Id.* (citation omitted). Ultimately, Judge Hamilton concluded:

> The plaintiffs' proposed class definition would require an individualized inquiry in each person's case as to whether there was reasonable suspicion

> that the person had some hidden weapon, drugs, or other contraband at the time of the search. That determination could not be made without hearing evidence on the circumstances of each person's arrest and detention- essentially, a trial on the merits. . . . Because highly individualized inquiries would be needed both to determine whether a person is a member of the proposed class and to determine damages, the court finds that a class action is not superior to other methods of resolving the matters in controversy.

*Id.* at *5.

The Court agrees with Judge Hamilton's analysis and concludes that his reasoning applies equally to this case. Here, Batchelor asserts that the PCSD has a standard policy of strip-searching all persons detained in the jail where there was not reasonable suspicion for believing the detainee had concealed controlled substances, weapons, or other contraband. As in *Bledsoe*, to determine whether or not an individual qualifies as a class member, regardless of whether Batchelor seeks injunctive or monetary relief, the Court will necessarily have to determine whether Defendants' search of that specific individual was supported by a reasonable suspicion that the individual had concealed controlled substances, weapons, or other contraband. Accordingly, the Court finds that a class action is not superior to other methods of resolving the matters in controversy. *Bledsoe*, 2000 WL 681094, at *5.

The Court notes the troubling testimony of Sgt. Robinson in the 2006 Deposition, wherein she testified that all detainees are subjected to a strip search. If true, the Court has no doubt that several individuals were searched without reasonable suspicion. However, to find and include those individuals in the class, the Court would necessarily have to entertain "mini-trials" for each prospective plaintiff. Ultimately, Rule 23 requires a manageable class. Unfortunately for Batchelor, he has not satisfied Rule 23(b).

Accordingly, Plaintiffs' Motion to Certify Class and Motion to Approve Form of Proposed Notice of Class Action are **DENIED**.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs', Scott May, as Personal Representative for the Estate of Hugh H. May, and John D. Batchelor, individually and on behalf of all others similarly situated, Motion to Certify Class and Motion to Approve Form of Proposed Notice of Class Action are **DENIED**. Defendants', Putnam County Sheriff Mark Frisbie, individually and in his official capacity, Sgt. Debra Robinson, individually, Unnamed Putnam County Jailers, individually, Motion for Summary Judgment is **GRANTED**.

IT IS SO ORDERED this 23rd day of March, 2009.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution to:

Robert Peter Kondras Jr.
HUNT HASSLER & LORENZ LLP
kondras@huntlawfirm.net

Michael Roy Morow
STEPHENSON MOROW & SEMLER
mmorow@stephlaw.com

Ian L. Stewart
STEPHENSON MOROW & SEMLER
istewart@stephlaw.com