UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JON D. BATCHELOR, individually and on behalf of all future pretrial detainees at the Putnam County Jail,       Plaintiff, <br><br> vs. <br><br> PUTNAM COUNTY SHERIFF STEVE FENWICK, in his official capacity,       Defendant. | 2:07-cv-286-LJM-WGH |

**MEMORANDUM OPINION & ORDER**

This matter comes before the Court for a decision on the merits following a bench trial.[1] This Memorandum Opinion & Order is intended to serve as the Court's findings of fact and conclusions of law after having examined the entire record and after having determined the credibility of the witnesses as contemplated by Rule 52(a) of the Federal Rules of Civil Procedure. Any factual statement or finding more appropriately considered a conclusion of law shall be so deemed, and vice versa.

**I. FINDINGS OF FACT**

On October 16, 2007, Hugh May initiated this litigation on behalf of himself and all others similarly situated. Dkt. No. 1. His Complaint sought individual, declaratory, and

---

[1] At the close of Batchelor's case, Sheriff Fenwick made a motion for judgment on the evidence, which the Court construes as a motion for judgment on partial findings under Federal Rule of Civil Procedure 52(c). Tr. at 226. The Court declines to render any judgment without considering all the evidence in this case. Fed. R. Civ. P. 52(c).

injunctive relief, and alleged that the Putnam County Jail has a policy of subjecting all detainees to a visual strip search upon intake. *Id.*

Hugh May passed away in November 2007, Dkt. No. 29, and the Court substituted Scott May, the personal representative of Hugh May's estate, as the named plaintiff. Dkt. No. 31. In 2008, the Court granted Scott May leave to file the Amended Complaint, which named Jon Batchelor as an additional plaintiff and potential class representative. Dkt. Nos. 45, 46. Eventually, the Court found that Hugh May's claims did not survive his death and terminated Scott May as a party to the underlying lawsuit. Dkt. No. 68 at 11-13. This left Batchelor as the lone potential class representative. *Id.*

In his Motion for Class Certification, Batchelor sought to represent two sub-classes of detainees at the Putnam County Jail. Dkt. No. 51.

1. Pretrial detainees who were subjected to a visual strip search upon intake into the Putnam County Jail during the period of time from October 17, 2005, to the present and for which records indicate were strip searched solely because they were arrested and despite no specific articulable individualized reasonable suspicion that they were secreting weapons or contraband.

2. All pretrial detainees who were subjected to a more invasive strip search (including search of genitalia, the anus, and/or breasts) upon intake into the Putnam County Jail during the period of time from October 17, 2005, to the present and for which records indicate were strip searched solely because they were arrested and despite no specific articulable individualized reasonable suspicion that they were secreting weapons or contraband.

Dkt. No. 51 at 1-2.

The Court found that Batchelor's claim was not typical of the subclass of detainees that were submitted to the "more invasive strip search," and declined to certify Batchelor as a representative of the second subclass. Dkt. No. 68 at 14. However, the Court

2

certified Batchelor as the representative of a slightly modified version of his first proposed subclass:

> All future pretrial detainees who will be subjected to a visual strip search upon intake into the Putnam County Jail solely because they are arrested and despite no specific articulable individualized reasonable suspicion that they are secreting weapons or contraband.

Dkt. No. 74 at 6.

Through an Order dated December 11, 2009, the Court granted former defendants', Putnam County Sheriff Mark Frisbie ("Sheriff Frisbie"), individually and in his official capacity, Sgt. Debra Robinson ("Sgt. Robinson"), individually, and Unnamed Putnam County Jailers, individually, Motion for Summary Judgment as to the claims asserted against them in their individual capacities. Dkt. 103 at 2. The Court also substituted Putnam County Sheriff Fenwick ("Sheriff Fenwick"), in his official capacity, for former Sheriff Frisbie. *Id.* at 1. Accordingly, the only claim that Batchelor pursued at trial was on behalf of the class against Sheriff Fenwick in his official capacity.[2] Tr. at 14.

On June 8, 2007, Batchelor was arrested for operating a vehicle while intoxicated with a prior, which is a Class D Felony. Tr. at 4-5, 20; Ind. Code § 9-30-5-3. He was taken to the Putnam County Jail in Greencastle, Indiana, and was visibly intoxicated and uncooperative upon arrival. Tr. at 5, 21-22, 110, 248. During the Putnam County Jail's booking process ("intake" or "intake processing"), all pretrial detainees are asked a series of questions regarding their medical history. Tr. at 109, 111; Def.'s Ex. B. The information

---

[2] The Court notes that its Order on Defendants' Motion for Summary Judgment did not foreclose Batchelor from pursuing a claim for damages against Sheriff Fenwick in his official capacity. Dkt. No. 103 at 2. Batchelor's decision to forego his damages claim does not change the Court's analysis with respect to any of the issues presented by his equitable claims.

gleaned from a detainee's responses is transmitted onto the detainee's personalized medical history form. Tr. at 110; Def.'s Ex. B. In addition to noting his intoxicated appearance, Batchelor's medical history form indicates that he was taking Xanax. Tr. at 110; Def.'s Ex. B.

Upon arriving at the Putnam County Jail with a pretrial detainee, arresting officers fill out a "remand form." Tr. at 111, 166; Def.'s Ex. C. The remand form is the first document that a jailer receives when processing a detainee through intake. Tr. at 112. Batchelor's remand form notes the charges precipitating his arrest and his breath alcohol concentration reading at the time of his arrest. Def.'s Ex. C.

The Putnam County Jail also keeps a computer record (a "BARS record"), which lists any of a pretrial detainee's prior arrests that resulted in detention at the Putnam County Jail. Tr. at 115. According to a June 24, 2008, printout of Batchelor's BARS record, Batchelor was arrested on June 11, 2007, for possession of a controlled substance and failure to appear. Def.'s Ex. D; Tr. at 119. In addition, Batchelor was arrested on June 8, 2000, for possession of a controlled substance.[3] Def.'s Ex. D. Putnam County jailers take note of a pretrial detainee's prior arrests during intake processing. Tr. at 114-115; Def.'s Ex. D; Second Tr. at 12, 22. Furthermore, jailers at the Putnam County Jail, in general, knew Batchelor as a former Putnam County Jail trustee. Tr. at 19, 223; Second Tr. at 15.

After Batchelor completed intake processing, two male jailers took him into a small room that was located behind Sgt. Robinson's desk. Tr. at 10, 23. The room contained a toilet, shower, mirror, laundry basket, and a gray cabinet with orange shirts, orange pants,

---

[3] Batchelor's BARS record also lists the charges precipitating his June 8, 2007, arrest. Tr. at 113-14.

and shoes. Tr. at 9. The jailers instructed Batchelor to take his clothes off. Tr. at 10. In full view of the jailers, Batchelor stripped down to the nude to change into the jail-issued orange shirt and pants. Tr. at 11-13. The jailers did not instruct Batchelor to show them any body cavity and did not touch him at any time. Tr. at 12. However, the jailers incidentally viewed Batchelor's nude body. *Id.* Batchelor cannot recall by name the jailers that watched him change into his jail-issued clothing. Tr. at 10. Similarly, the Putnam County Jail does not have a record of who was with Batchelor when he changed into the jail-issued shirt and pants. Tr. at 99.

On November 11, 2006, Hugh May ("May") was arrested and transported to the Putnam County Jail. Tr. at 250. He was intoxicated and uncooperative, and the arresting officer found pills on his person. *Id.* During intake processing, May appeared agitated and did not want to relinquish his clothes when he was instructed to undress down to his boxer shorts and t-shirt. Tr. at 251-52. Eventually, May agreed to part with his pants. *Id.* As he handed his pants to a jailer, a contact case fell out of May's pocket. *Id.* The contact case contained pills. Tr. at 251-52. Prior to this time, May was never completely naked in full view of one or more jailers. Tr. at 252. However, after the jailers discovered the pills that fell from May's pants pocket, he was subjected to what the Putnam County Jail refers to as a "strip search," because the jailers thought that May might be hiding other drugs on his person. *Id.*

During a strip search, Putnam County jailers intentionally view a pretrial detainee's naked body and sift through the detainee's clothing to look for drugs, contraband, or weapons. Tr. at 37, 47. In addition, the detainee is told to squat, spread his or her buttocks, and cough, and to open his or her mouth and lift the tongue to make sure that the

5

detainee is not hiding anything in any body cavity. Tr. at 38-39, 81. Furthermore, male detainees are instructed to lift their scrotum and, if necessary, peel back their foreskin, and female detainees are told to lift their breasts. Tr. at 38, 105; Pl.'s Ex. 3 at 193.

From 2006 through the present time, one of Sgt. Robinson's duties has been to train newly hired jailers. Tr. at 32. As part of her own training, Sgt. Robinson knows that a jailer must have reasonable suspicion that a pretrial detainee is hiding drugs, contraband, or weapons before he or she can subject the detainee to a strip search.[4] Tr. at 37, 47.

Pursuant to the Jail Operations Manual, two written records must be kept for every strip search performed at the Putnam County Jail, a strip search log entry and a strip search form. Tr. at 50; Pl.'s Ex. 3 at 186; Pl.'s Ex. 2. These records contain the date of the detainee's arrest, the name of the detainee who was strip searched and the names of the jailers involved, the reasons for the strip search, and what, if anything, was discovered during the strip search. Pl.'s Ex. 3 at 186; Pl.'s Ex. 2.

Before 2009, jailers at the Putnam County Jail did not regularly follow the Jail Operations Manual. Tr. at 51, 54, 58, 107, 200-02, 213-14. This is evidenced by the Putnam County Jail's records for seventy-four former inmates or pretrial detainees. Tr. at 147; Pl.'s Ex. 6. The BARS records for twenty-six of the seventy-four former inmates or detainees indicated that they were strip searched during intake processing. Tr. at 150. Of the twenty-six, eight were either Department of Corrections inmates or were serving a

---

[4] However, according to the Putnam County Jail Operations Manual, as it existed at the time of Batchelor's arrest, a strip search could also be performed when a detainee was brought in on felony charges. Pl.'s Ex. 3 at 185; Tr. at 131-32. The Jail Operations Manual was amended on December 1, 2008, substituting the phrase "violent charges" for "felony charges." Pl.'s Ex. 7, Dkt. No. 83-4 at 5; Tr. at 192-93, 216-17.

6

weekend sentence for violating the conditions of their probation. Tr. at 169. The remaining eighteen were pretrial detainees. *Id.* The Putnam County Sheriff's Department was unable to locate a completed strip search form for any of these purported strip searches. Tr. at 152. BARS records indicate the initials of either the jailer who performed the strip search, or the jailer who ordered the strip search, but do not indicate the reasons why a particular pretrial detainee or inmate was strip searched. Tr. at 53-54, 97-98, 224. Accordingly, with regard to the eighteen detainees who were strip searched, the Putnam County Jail does not have any records to demonstrate the reasons why a particular jailer subjected a particular pretrial detainee to a strip search. Tr. at 153, 162. However, much the same as in Batchelor's case, the Putnam County Jail has records that were available to all jailers, which provide reasons why all of the eighteen detainees may have been subjected to a strip search. Tr. at 173-74, 183-85; Williams Dep. For instance, a number of the eighteen pretrial detainees who were strip searched were suspected of either being under the influence of narcotics or in possession of a controlled substance upon arriving at the Putnam County Jail. Tr. at 184-85; Williams Dep.

During intake processing, every pretrial detainee at the Putnam County Jail is required to change out of his or her clothes and into jail-issued clothing (a "change-out"). Tr. at 60, 82; Pl.'s Ex. 3 at 77. The Jail Operations Manual does not require the existence of reasonable suspicion that a detainee is hiding drugs, contraband, or weapons before the detainee is instructed to change-out. Pl.'s Ex. 3 at 77. It also does not contain any provision that refers to a change-out as a "search," or detailed instructions for how to perform a change-out. *Id.*; Tr. at 178. In addition, there is no record kept that would

7

describe which jailers are present, what takes place or, if necessary, what is discovered during a change-out. Tr. at 115, 180.

Information gleaned from the seventy-four records revealed that thirteen detainees had their underwear taken from them during their change-outs. Tr. at 155-57. Again, there were no records found explaining why their underwear was removed. Tr. at 157. However, the Putnam County Jail formerly had a policy in place whereby inmates wearing colored underwear were asked to exchange it for white underwear.[5]  *Id.*; Tr. at 170. Under this policy, the jailer would exit the room before instructing the detainee to remove their underwear. Tr. at 170.

At trial, Sgt. Robinson testified that a pretrial detainee is never completely naked in full view of a jailer during a change-out. Tr. at 79, 85, 90. Sgt. Robinson also testified that sometimes detainees are in view of jailers during a change-out, but are never required to strip down to the nude in such a situation. Tr. at 82, 90. Rather, a detainee would only remove his or her outer clothes while a jailer was still in the room, and the jailer would exit the room before the detainee removed his or her underwear. Tr. at 90-91, 101.

On December 29, 2006, Sgt. Robinson was deposed in anticipation of May's criminal case. Dkt. No. 97-2; Tr. at 70. During her deposition, Sgt. Robinson was asked to describe a change-out. *Id.* She said,

> That is a visual search. If we have reason to believe that they have drugs on them, then a strip search is conducted, which is an entirely totally different

---

[5] Sheriff Fenwick was responsible for changing this policy. Tr. at 208-10. Sheriff Fenwick replaced Frisbie as Putnam County Sheriff in September 2008. Tr. at 190. Before that time Sheriff Fenwick served as the Putnam County Jail Commander. *Id.* During Sheriff Frisbie's tenure as Sheriff, he frequented the Putnam County Jail for approximately fifteen minutes a week. Tr. at 207.

> thing. If we do not suspect drugs or any contraband such as that, then the [detainee] is just asked to undress totally.

Dkt. No. 97-2 at 4-5; Tr. at 71. In addition, when asked if the detainee is "completely naked at that point[,]" Sgt. Robinson answered, "Yes, sir." Dkt. No. 97-2 at 5; Tr. at 126.

At trial, when asked to explain her 2006 deposition testimony, Sgt. Robinson testified that when she said "undress totally," she meant that detainees are required to undress down to their underwear. Tr. at 102. She went on to testify that it has always been her understanding that a detainee is only required to remove his or her underwear during a strip search. Tr. at 103. In other words,

> "[t]here's two different types of naked. There's naked when you're totally without clothing. Then there's naked where you have your underwear on. I consider that naked too."

Tr. at 126.

The Court is not convinced by Sgt. Robinson's explanation for her 2006 deposition testimony. Rather, the Court finds that at the time of Sgt. Robinson's 2006 deposition, it was her belief that during a change-out, pretrial detainees removed their underwear and were completely naked in full view of one or more jailers. However, no evidence was presented that Sgt. Robinson or any other Putnam County jailer ever acted upon her previously held, incorrect belief regarding the degree of visual intrusion that takes place during a change-out. In other words, there is no evidence that Sgt. Robinson either ordered or conducted a change-out during which a pretrial detainee was completely naked in full view of a jailer.

On March 25, 2009, the Putnam County Sheriff's Department issued an inter-department memorandum that states the Putnam County Jail's policy on strip searches. Def.'s Ex. A; Tr. at 106, 109. The memorandum reads, in pertinent part:

> According to our attorney, whenever the underwear is removed in our presence it is considered a strip search. You may still change inmates that do not qualify for a strip search out but they are not to remove their underwear.
>
> Anytime you believe that a strip search is necessary, be sure to complete a strip search form to make sure it is allowed in the situation. . . .
>
> It is very important that this form is being completed. In the future, if you conduct a strip search and do not complete a strip search form there will be disciplinary action.

Def.'s Ex. A. The purpose of the 2009 memorandum was to emphasize the importance of completing strip search forms and to make it clear that, in the future, their would be repercussions for failing to complete strip search forms. Tr. at 221, 273-74. Before the 2009 memorandum issued, there was no threat of discipline for failing to follow the Putnam County Jail's strip search procedures. Tr. at 195, 221. Since the 2009 memorandum issued, there are corresponding strip search forms for pretrial detainees whose BARS records indicate that they were strip searched. Tr. at 274-75; Second Tr. at 5-6, 14-15, 55-56, 65; Def.'s Exs. H, I, J.

With regard to the difference between strip searches and change-outs at the Putnam County Jail, the 2009 memorandum did not reflect a change in policy. Tr. at 107, 220-21, 247-48, 273-74; Second Tr. at 4-5, 13-14, 24-25, 34, 58. Jailers at the Putnam County Jail know that they must have reasonable suspicion that a detainee is hiding drugs, contraband, or weapons before they can subject the detainee to a strip search. Tr. at 163-64, 220, 245-47, 270; Second Tr. at 2, 11, 32, 52, 61-62. Furthermore, Putnam County jailers know that

the main difference between a strip search and a change-out is that during a change-out, a detainee is never completely naked in full view of a jailer, while during a strip search, a detainee is always completely naked in full view of a jailer. Tr. at 164, 218, 245-46, 262-63, 271; Second Tr. at 2, 11-12, 20-21, 30, 46, 52-53, 63. Apart from Batchelor's case, there is no evidence that jailers at the Putnam County Jail subjected any pretrial detainee to a change-out while the detainee was completely naked in full view of one or more jailers.

## II. **CONCLUSIONS OF LAW**

The elements of a *Monell* claim are: (1) the deprivation of a constitutional right and (2) that the deprivation was caused by the municipality's policy or custom. *Powe v. City of Chicago*, 664 F.2d 639, 643 (7th Cir. 1981) (citing *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978)). Accordingly, in order to move forward on his *Monell* claim, Batchelor must begin by showing an underlying constitutional violation. *Houskins v. Sheahan*, 549 F.3d 480, 493-94 (7th Cir. 2008). Batchelor asserts that his Fourth Amendment rights were violated when he was forced to completely undress in full view of two male jailers as part of his change-out.

The Supreme Court's Fourth Amendment jurisprudence stops short of declaring the degree of visual intrusion that a pretrial detainee can be subjected to without sufficient justification. *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1269-70 (7th Cir. 1983) (ultimately holding that it is unconstitutional to subject pretrial detainees to intentional visual inspections of their anal and genital reasons without "an objective standard" against which to measure the facts upon which the search is based). In *Mary Beth G.*, the Seventh Circuit opined that it was substantially intrusive to subject pretrial detainees to intentional

visual inspections of their vaginal and anal areas. *Id.* at 1272-73 (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). However, in *Stanley v. Henson*, the court decided that it was not excessively intrusive to require a pretrial detainee to disrobe all but her underpants when changing into jail issued clothing, leaving her in full view of a jail matron for two-minutes. 337 F.3d 961 (7th Cir. 2003). This was true despite the fact that the detainee was not wearing a brassiere at the time. *Id.* at 966.

It is between these parameters that the Court must balance the intrusiveness of the search that Batchelor was subjected to against Sheriff Fenwick's asserted justification, namely that at the time Batchelor was processed through intake, the jailers who conducted the search had reasonable suspicion that Batchelor was concealing drugs or other contraband.[6] *Id.* The Seventh Circuit has held that it is constitutionally permissible to subject pretrial detainees to intentional visual inspections of their anal and genital regions "when there is probable cause to believe that a controlled substance is hidden on or within the person's body." *Salinas v. Breier*, 695 F.2d 1073, 1085 (7th Cir. 1982); *cf. Mary Beth G.*, 723 F.2d at 1273 ("The more intrusive the search, the closer government authorities

---

[6] The Court notes that Sheriff Fenwick did not present evidence of any additional justification for Batchelor's search. *See Bell v. Wolfish*, 441 U.S. 520, 559 (1979) (instructing that the Fourth Amendment's reasonableness test requires balancing "the need for the particular search against the invasion of personal rights that the search entails[,]" based on the unique facts of each case); *see also Mary Beth G.*, 723 F.2d at 1272-73 (discussing the evidence in support of the City's proffered justification for the searches at issue and concluding that "the evidence does not support the [City's proffered justification.]"); *but see Stanley*, 337 F.3d at 966 (recognizing the significant governmental interest in maintaining institutional security as well as the safety of jail officers and inmates as a valid justification for the clothing exchange procedure at issue, without discussing evidence in support of the justification). Sheriff Fenwick did present evidence in support of his justification for the Putnam County Jail's strip search policy. Tr. at 221-22, 264-65; Second Tr. at 13, 23-24.

12

must come to demonstrating probable cause for believing that the search will uncover the objects for which the search is being conducted.") (quoting *Delaware v. Prouse*, 440 U.S. 648, 654 (1979)); *see also Tinetti v. Wittke*, 620 F.2d 160 (7th Cir. 1980) (per curiam) (same). Accordingly, whether analyzing the issue in terms of "probable cause," as in *Salinas* and *Tinetti*, or "reasonable suspicion," as in *Mary Beth G.*, if the search of Batchelor was based on some articulable reason to believe that he was concealing drugs on his person, no constitutional violation would follow. *Salinas*, 695 F.2d at 1085; *Tinetti*, 620 F.2d at 160; *Mary Beth G.*, 723 F.2d at 1273.

Sheriff Fenwick asserts that the jailers who made the decision to order Batchelor to remove his clothes in their presence would have had reasonable suspicion to believe that Batchelor was concealing drugs on his person based on the information that was available to all Putnam County jailers via Batchelor's BARS record, medical history form, and remand form, to say nothing of Batchelor's intoxicated appearance and uncooperative demeanor. "Whether a suspicion is reasonable depends upon such factors as the nature of the offense, the arrestee's appearance and conduct, and the prior arrest record." *Kraushaar v. Flanigan*, 45 F.3d 1040, 1045 (7th Cir. 1995) (internal quotation marks and citations omitted). When determining whether an officer had an objectively reasonable suspicion to support a warrantless search, a court "look[s] to the record as a whole to determine what facts were known to the officer and then consider[s] whether a reasonable officer in those circumstances would have been suspicious." *United States v. Ford*, 333 F.3d 839, 843 (7th Cir. 2003) (emphasis removed).

In this case, the evidentiary hurdle that prevents the Court from undertaking a meaningful analysis in light of these standards is the fact that neither party could identify

the jailer or jailers who made the decision to order Batchelor to remove all of his clothing and underwear in their presence or in the presence of other jailers. As stated above, Batchelor could not recall any jailer by name, and the Putnam County Jail does not keep a record of the jailer or jailers who are present with a pretrial detainee during his or her change-out.

At trial, Sheriff Fenwick presented ample evidence of what the unidentified jailer or jailers would have known. Evidence of Batchelor's intoxicated appearance and uncooperative demeanor along with his record of prior drug-related arrests and current Xanax prescription would certainly give any jailer with knowledge thereof reason to search him. However, as the Court indicated in its Summary Judgment Order, this is no substitute for what the unidentified jailer or jailers actually knew. Dkt. No. 103 at 18-19; *see United States v. Parra*, 402 F.3d 752, 764 (7th Cir. 2005) (discussing the limits of the collective knowledge doctrine). Therefore, the question becomes whether it is the plaintiff's or the defendant's burden to identify any individual jailers who were responsible for the decision and, if different, the jailers who watched Batchelor completely undress.

This is a question that neither party reached during the course of this litigation and it is a question that, upon the Court's review, has not been addressed by the Seventh Circuit. *See Harper v. Albert*, 400 F.3d 1052, 1065-66 (7th Cir. 2005) (affirming the district court's judgment as a matter of law where the plaintiff failed to identify the guard or guards that allegedly violated his Eighth Amendment rights, and "part of [the court's] task [was] to inquire into the prison official's state of mind" to determine whether he or she acted "wantonly."); *K.P.F. v. Dane County*, 110 F.3d 516, 519 (7th Cir. 1997) (same conclusion where part of plaintiff's burden was to prove that prison guards violated his Eighth

14

Amendment rights "by their deliberate indifference to the danger posed[.]") (internal quotation marks omitted); *see also Pinskton v. Madry*, 440 F.3d 879, 890 n.16 (7th Cir. 2006) ("[I]n order to prevail on a § 1983 claim a plaintiff must identify those individuals who have allegedly violated a constitutional right."). In the Court's opinion, the Seventh Circuit cases indicating that it is the plaintiff's burden to identify the culprit in order to prevail on a § 1983 claim are inapplicable in this context. To conclude otherwise would be to reward correctional facilities for failing to properly document the steps taken to ensure that the constitutional rights of their pretrial detainees are respected; a step that the Court is unwilling to take. Accordingly, the Court proceeds to consider Batchelor's claim as if there were no articulable reason for the Putnam County jailers to subject Batchelor to a visual search of his naked body.

Without reason to believe that Batchelor was hiding drugs or other contraband on his person, the Court is left with balancing Batchelor's interest in privacy against Sheriff Fenwick's lack of evidence in support of any plausible justification for the search. *See* cases cited *supra* note 6. Although Batchelor suffered an intrusion that went one step further than the search at issue in *Stanley*, the scope of the intrusion did not approach the searches at issue in *Tinetti*, *Salinas*, and *Mary Beth G*. Compare *Stanley*, 337 F.3d at 965 (describing the brief disrobing that Ms. Stanley was forced to undergo and noting that while her breasts were exposed, her genitals were not), *with Tinetti v. Wittke*, 479 F.Supp. 486, 488 (D.C. Wis. 1979), *aff'd*, 620 F.2d 160 (7th Cir. 1980) (per curiam) (describing intentional visual inspections of pretrial detainees' anal and genital regions); *Salinas*, 695 F.2d at 1085 (same); *Mary Beth G.*, 723 F.2d at 1267 n.3 (same). In the Court's view, the intrusion was mildly embarrassing. However, every intrusion, beyond that of searching

items that were on a pretrial detainee's person at the time of arrest, requires some justification. *Mary Beth G.*, 723 F.2d at 1270-72. Accordingly, the Court concludes that the unjustified search of Batchelor was unreasonable in violation of the Fourth Amendment.

This brings the Court to the second element of Batchelor's *Monell* claim, which the Court restates as whether, assuming Batchelor's Fourth Amendment rights were violated, Batchelor's injury was caused solely by the unidentified jailers, or whether the harm was done pursuant to the Putnam County Jail's policy or custom. *Abott v. Village of Winthrop Harbor*, 205 F.3d 976, 981 (7th Cir. 2000). Courts have identified three general ways for a plaintiff to prove an unconstitutional policy or custom: 1) an express municipal policy; 2) a widespread practice constituting custom or usage; or 3) a constitutional injury caused or ratified by a person with final policymaking authority. *Simmons v. Chicago Bd. of Educ.*, 289 F.3d 488, 494 (7th Cir. 2002).

Batchelor initiated this lawsuit intending to prove either the first or second variant of an unconstitutional policy or custom. Am. Compl., Dkt. No. 46, at ¶ 24. As the Court indicated above, Sgt. Robinson's 2006 Deposition testimony does not persuade the Court that the Putnam County Jail had an express policy of subjecting all pretrial detainees to a change-out during which the detainees were completely naked in full view of one or more jailers. There was no such policy expressed in the Jail's written policies and procedures, and based on the testimony of several current and former Putnam County jailers, the Court finds that no such express policy existed.

As to the second variant of an unconstitutional policy or custom, "proof of isolated acts of misconduct will not suffice; a series of violations must be presented . . . ." *Palmer v. Marion County*, 327 F.3d 588, 596. Outside of his own example, Batchelor has not

directed the Court to any pretrial detainee at the Putnam County Jail who was subjected to a change-out during which he or she was completely naked in full view of one or more jailers. Instead, Batchelor attempted to make his case by demonstrating a lack of documentation for eighteen pretrial detainees who were made to undergo a more invasive "strip search," akin to the searches at issue in *Tinetti*, *Salinas*, and *Mary Beth G.* However, early on in this litigation the Court declined to certify Batchelor as a representative of that subclass of individuals. Dkt. No. 68 at 14.

While it is troubling that the Putnam County Jail cannot provide the Court with documentation to justify the invasive searches of these eighteen individuals, that is not the issue before the Court. The Court held a trial in this matter to receive evidence regarding Batchelor's assertion that the Putnam County Jail has a policy and practice of subjecting all pretrial detainees to a brief visual search of their naked bodies during the Jail's change-out procedures. After examining all the evidence, the Court concludes that Batchelor has not proven the existence of such a policy. Accordingly, the Court need not evaluate the merits of Batchelor's assertion that injunctive relief is necessary. *See Plummer v. Am. Institute of Certified Public Accountants*, 97 F.3d 220, 229 (7th Cir. 1996) (stating the four criteria a court considers when deciding whether to grant a permanent injunction).

### III. **CONCLUSION**

Pursuant to the foregoing findings of fact and conclusions of law, the Court finds in favor of the defendant and against the plaintiff on all counts. Judgment shall issue accordingly.

IT IS SO ORDERED THIS 5th day of May, 2010.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution to:

Robert Peter Kondras Jr.
HUNT HASSLER & LORENZ LLP
kondras@huntlawfirm.net

Michael Roy Morow
STEPHENSON MOROW & SEMLER
mmorow@stephlaw.com

Ian L. Stewart
STEPHENSON MOROW & SEMLER
istewart@stephlaw.com

.